**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

ELENA R.,[1]

       Plaintiff,

      v.                                               Civ. No. 24-1235 SCY

FRANK BISIGNANO,
Commissioner of Social Security,

       Defendant.

**MEMORANDUM OPINION AND ORDER**

Plaintiff argues that the Commissioner committed error when denying the claim for disability insurance benefits brought by Plaintiff's deceased spouse ("Claimant") under the Social Security Act, 42 U.S.C. §§ 401-434. Specifically, Plaintiff asserts that the Administrative Law Judge ("ALJ") improperly terminated the disability process at step two when he discounted evidence of hand tremors from 2015 and the opinion of Claimant's treating neurologist. The Court finds that Claimant satisfied his "de minimis" burden at step two of the disability analysis and that the ALJ therefore should have proceeded to the next step. As a result, the Court GRANTS Plaintiff's Motion to Remand and remands for further proceedings.[2]

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

[2] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings and to enter an order of judgment. Docs. 4, 7, 8. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c). The Court reserves discussion of the background, procedural history, and medical records relevant to this appeal for its analysis.

**APPLICABLE LAW**

A.    Disability Determination Process

An individual is considered disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (pertaining to disability insurance benefits); *see also id.* § 1382c(a)(3)(A) (pertaining to supplemental security income disability benefits for adult individuals). The Social Security Commissioner has adopted the familiar five-step sequential evaluation process ("SEP") to determine whether a person satisfies the statutory criteria as follows:

(1)    At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity."[3] If the claimant is engaged in substantial gainful activity, he is not disabled regardless of his medical condition.

(2)    At step two, the ALJ must determine the severity of the claimed physical or mental impairment(s). If the claimant does not have an impairment or combination of impairments that is severe and meets the duration requirement, he is not disabled.

(3)    At step three, the ALJ must determine whether a claimant's impairment(s) meets or equals in severity one of the listings described in Appendix 1 of the regulations and meets the duration requirement. If so, a claimant is presumed disabled.

(4)    If, however, the claimant's impairments do not meet or equal in severity one of the listings described in Appendix 1 of the regulations, the ALJ must determine at step four whether the claimant can perform his "past relevant work." Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the

---

[3] "Substantial work activity is work activity that involves doing significant physical or mental activities." 20 C.F.R. §§ 404.1572(a), 416.972(a). The claimant's "[w]ork may be substantial even if it is done on a part-time basis or if [he] doe[es] less, get[s] paid less, or ha[s] less responsibility than when [he] worked before." *Id.* "Gainful work activity is work activity that [the claimant] do[es] for pay or profit." *Id.* §§ 404.1572(b), 416.972(b).

most [the claimant] can still do despite [his physical and mental] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* §§ 404.1545(a)(3), 416.945(a)(3). Second, the ALJ determines the physical and mental demands of the claimant's past work. Third, the ALJ determines whether, given the claimant's RFC, the claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled.

(5)    If the claimant does not have the RFC to perform his past relevant work, the Commissioner, at step five, must show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. If the Commissioner is unable to make that showing, the claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 404.1520(a)(4) (disability insurance benefits); 20 C.F.R. § 416.920(a)(4) (supplemental security income disability benefits); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).

The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). The burden shifts to the Commissioner at step five to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

B.    <u>Standard of Review</u>

The court must affirm the Commissioner's denial of social security benefits unless (1) the decision is not supported by "substantial evidence" or (2) the ALJ did not apply the proper legal standards in reaching the decision. 42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Casias*, 933 F.2d at 800-01. In making these determinations, the court neither reweighs the evidence nor substitutes

its judgment for that of the agency. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted). "Substantial evidence . . . is 'more than a mere scintilla.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted).

A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record," *Langley*, 373 F.3d at 1118 (internal quotation marks omitted), or "constitutes mere conclusion," *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The agency decision must "provide this court with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted). Therefore, although an ALJ is not required to discuss every piece of evidence, "[t]he record must demonstrate that the ALJ considered all of the evidence" and "a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (internal quotation marks omitted). But where the reviewing court "can follow the adjudicator's reasoning" in conducting its review, "and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). The court "should, indeed must, exercise common sense." *Id.* "The more comprehensive the ALJ's explanation, the easier [the] task; but [the court] cannot insist on technical perfection." *Id.*

<u>**ANALYSIS**</u>

The ALJ concluded that Claimant's medically determinable impairments were nonsevere and terminated the disability analysis at step two. The Tenth Circuit has held that that a claimant's burden at this step is "de minimis." Plaintiff argues that Claimant presented more than minimal evidence that his impairments impacted at least one ability to perform basic work activities (manipulation or fine motor control), while the Commissioner argues that the ALJ's decision is supported by substantial evidence. Because the Court finds that neither the ALJ nor the Commissioner on appeal apply the correct standard of law—whether Claimant satisfied this "de minimis" burden—the Court finds that the ALJ did not apply the proper legal standard and reverses for the ALJ to proceed past step two on remand.

## I.  BACKGROUND

The relevant period of disability in this case is between Claimant's alleged onset date of January 1, 2015 through his date last insured of December 31, 2018. AR 19. At step two of the disability analysis, the ALJ found that, during the relevant period, Claimant had medically determinable impairments of gastroesophageal reflux disease, mild aneurysm, obesity, osteoarthritis and anxiety. *Id*. But the ALJ concluded that these impairments did "not significantly limit Claimant's ability to perform basic work activities" including physical functions such as lifting, pushing, pulling, reaching, carrying, or handling. AR 20, 28.

At the administrative hearing, Claimant alleged limitations due to a combination of symptoms or conditions associated with Parkinson's disease. AR 22. He testified that although this condition was not diagnosed until years after the relevant period, he experienced intermittent bilateral hand tremors as early as 2014, which progressed over time and caused increasing difficulty manipulating objects, writing, and other dexterity deficits. *Id*. During the relevant period, his tremors and related difficulty writing and utilizing hand tools were his biggest

5

hindrance to working. *Id.* He then sought treatment with a specialist in 2021, who originally diagnosed Claimant with essential tremors and then later Parkinson's disease. *Id.*

With respect to the medical evidence, the ALJ noted that a December 2021 MRI study was "grossly unremarkable." *Id.* "'[I]f the patient is indeed demonstrating clinical signs of Parkinson's disease, SWI imaging at this time is in the indeterminate category as seen.'" *Id.* (quoting AR 625). At a May 2022 office visit with Boris Kalm, MD, Claimant reported that he started noticing the tremors around 2019 and that his prescribed medications had helped control or slightly improve his symptoms. *Id.* The ALJ stated that "while the Claimant reported a history of tremors that were mainly present when he was doing anything that required fine motor skills, like signing his name, his condition was regarded as stable, and he was diagnosed with essential tremors and only possible early onset of Parkinson's rather than a definite diagnosis." *Id.* The ALJ acknowledged that "[t]here is some notation of bilateral intention tremors with certain activities as early as March 2015," but discounted this evidence because "these were described as very minimal to slight, intermittent, and dependent on what was going on." *Id.* (citing AR 678, 694, 698, 710-11, 715).

The ALJ's comprehensive review of the medical record acknowledged that on physical examination in March 2015, Claimant exhibited a slight, bilateral hand tremor when his arms extended, worse on the left and when doing activity, as well as tremor to the right side of mouth. AR 23 (citing AR 701-02, 704-07, 710-11). Claimant also reported tremors in the lower extremities. *Id.* "Claimant was diagnosed with tremor- physiologic v essential with intention component and given a referral to neurology." *Id.* (citing AR 707). Concluding the review of medical evidence, the ALJ asserted: "All-in-all, physical examinations demonstrated no

significant musculoskeletal abnormalities or focal motor, sensory, or neurologic deficits that would preclude all work." AR 25.

With respect to the opinion of Claimant's neurologist, Justine Chan, MD (who started treating Claimant after his date last insured), the ALJ stated:

> I considered the statements of Justine Chan, MD, who provided incomplete responses to a residual functional capacity questionnaire form in October 2023, indicating that the Claimant had Parkinson's disease and that his symptoms were believed to have existed during the relevant period. The doctor noted that the Claimant's reported symptoms such as tremors, rigidity, bradykinesia, hypokinesia, impaired control of distal musculature, and impaired ability to perform rapid successive movements dated back to December 2018 or earlier. (11F/4). Dr. Chan stated that the Claimant began to have bilateral hand tremors since at least 2015 along with chin tremor, dexterity challenges, and overall slowness to do things on a daily basis. He was originally diagnosed with essential tremor, but given progression of his symptoms, he was later diagnosed with Parkinson's disease. (11F/2). The doctor believed this because the Claimant himself reported mild to moderate tremors in his hands and chin since 2015 and those reported symptoms were consistent with Parkinson's disease. (11F/4). Dr. Chan also noted the Claimant suffered from symptoms of anxiety with impaired short-term memory, attention, and concentration, and a reduced ability to attend to and persist in tasks. (11F/5).
>
> This assessment is of little value or utility. Notwithstanding the incomplete nature of the response to the form, the doctor simply indicated limitations with checked boxes and never identifies any medical or clinical findings to support the assessment beyond the Claimant's diagnoses and subjectively reported symptoms. However, more importantly, the doctor noted that they did not begin treating the Claimant until December 5, 2022, and only had 3 visits with the Claimant at the time the form was filled out. (11F/4-5). Thus, the doctor did not treat the Claimant from 2015-2018, and therefore would be unable to provide any objective assessment of the Claimant's limitations, if any, during the relevant period. Dr. Chan even remarked that "it is hard for me to ascertain his functional ability prior to meeting him." (11F/2).

AR 27-28.

On appeal, Plaintiff argues that this analysis was error because the evidence supported something more than "a slight abnormality" as it related to Claimant's ability to perform work. Doc. 14 at 8. The Commissioner's response contends that the ALJ's analysis is entitled to

deference as it is supported by substantial evidence and Dr. Chan's statement is not a medical

opinion. Doc. 17.

## II.    DISCUSSION

"At step two, it is the claimant's burden to demonstrate an impairment, or a combination

of impairments, that significantly limit her ability to do basic work activities." *Langley v.*

*Barnhart*, 373 F.3d 1116, 1118 (2004). The Tenth Circuit has instructed that this is a

"nondemanding standard," *Hawkins v. Chater*, 113 F.3d 1162, 1169 (10th Cir. 1997), which

requires only a "de minimis" showing from the claimant:

> The Supreme Court has adopted what is referred to as a "de minimus" standard
> with regard to the step two severity standard: "only those claimants with slight
> abnormalities that do not significantly limit any 'basic work activity' can be
> denied benefits without undertaking" the subsequent steps of the sequential
> evaluation process. *Bowen v. Yuckert,* 482 U.S. 137, 158 (1987) (O'Connor, J.,
> concurring) . . . .

*Langley v. Barnhart*, 373 F.3d 1116, 1123 (2004) (alterations omitted and citation amended).

Justice O'Connor's concurring opinion in *Yucker*, cited with approval by the Tenth Circuit,

further explained that step two is designed "to weed out at an early stage of the administrative

process those individuals who cannot possibly meet the statutory definition of disability."

*Yuckert*, 482 U.S. at 156 (O'Connor, J., concurring).

In other words, the inquiry at step two is a "de minimis screening device to dispose of

groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996); *Higgs v. Bowen,* 880

F.2d 860, 862-63 (6th Cir.1988); *Church v. Shalala*, 21 F.3d 1120 (10th Cir. 1994) (unpublished

table decision). Given this purpose, "case law prescribes a very limited role for step two

analysis." *Lee v. Barnhart*, 117 F. App'x 674, 676-77 (10th Cir. 2004). Indeed, the agency has

likewise ruled that step two is designed to screen out only those claimants with "impairments of

a minimal nature which could never prevent a person from working." SSR 85-28, 1985 WL

56856, at *2. The agency therefore stated that the medical evidence must "clearly establish[]" that the impairment is not severe in order to terminate the analysis at step two. *Id.*

The Commissioner on appeal contends that "substantial evidence supports the ALJ's determination that the Claimant's impairments, considered individually and in combination, did not significantly limit his ability to perform basic work activity before the expiration of his date last insured in December 2018." Doc. 17 at 9. This is not the proper standard of review. Social Security Ruling 85-28[4] and the case law instead require the Court to "determine whether the ALJ had substantial evidence *to find that the medical evidence clearly established* that [the claimant] did not have a medically severe impairment or combination of impairments." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (emphasis added). In other words, the Court asks whether the ALJ properly applied the "de minimis" standard when evaluating Claimant's evidence of limitations, not whether substantial evidence supported the ALJ's weighing of the evidence (as it would under step four of the disability analysis). Here, that question turns on whether the medical evidence is clear that Claimant's hand tremors could not have affected his ability to use his hands at work.

The Court concludes the ALJ did not apply the "de minimis" standard in this case. The ALJ acknowledged that some evidence, including Claimant's testimony, medical records from 2015, and the opinion of Claimant's treating neurologist, established that Claimant suffered hand tremors that affected his work-related abilities of handling, writing, using tools, and other skills requiring motor control. But the ALJ discounted this evidence because of physical examinations that reflected only "slight" or "intermittent" tremors, an MRI showing no irregularities, and the

---

[4] Social Security Rulings are "'binding on all components of the Social Security Administration,' including ALJs." *Blea v. Barnhart*, 466 F.3d 903, 909 (10th Cir. 2006) (quoting the regulation currently codified at 20 C.F.R. § 402.160(b)(1)).

fact that Claimant's diagnosis and treatment for Parkinson's occurred after the relevant period. AR 22-23.

In other words, the ALJ did not ask whether Claimant had presented "de minimis" evidence of limitations, but instead found that the contrary evidence outweighed Claimant's evidence. This is simply not the correct question to ask at step two. The question is whether the medical evidence "clearly establishe[s]" the lack of limitations. SSR 85-28, 1985 WL 56856, at *3. In the course of weighing the evidence and giving reasons to discount the evidence establishing limitations, the ALJ implicitly acknowledged that the evidence is not clear. *Cf. Brand v. Berryhill*, No. 17cv1203 WJ-LF, 2019 WL 1055628, at *6 (D.N.M. Mar. 6, 2019) (denial at step two is inappropriate where the medical evidence is equivocal, and collecting cases), *report and recommendation adopted*, 2019 WL 1370100 (D.N.M. Mar. 26, 2019).

Even if some weighing of the evidence may be necessary as a practical matter at this step, the ALJ's reasons are inconsistent with the application of a de minimis standard. For example, the ALJ discounted the medical evidence of tremors from 2015 because the tremors were slight or intermittent. AR 22. But this is stacked against other evidence on physical examination that the tremor worsened during the relevant period, AR 706, AR 702, and necessitated a referral to neurology, AR 707. This medical evidence does not "clearly establish" that Claimant's tremor could not have had an effect on his motor control required for work-related activities.

The ALJ also relied on Claimant's statement that "his prescribed medications had helped control or slightly improve his symptoms." *Id.* But symptom treatment does not indicate whether an impairment is severe or not. *Grotendorst v. Astrue*, 370 F. App'x 879, 883 (10th Cir. 2010) ("[T]he regulations set out exactly how an ALJ is to determine severity, and consideration of the

amount of *treatment* received by a claimant does not play a role in that determination."). Discounting evidence of tremor because of a statement about treatment was error at step two.

Finally, the ALJ discounted the medical evidence of tremors from 2015 because the records reflect "only possible early onset of Parkinson's rather than a definite diagnosis." AR 22. But the ALJ then proceeded to give no credence to the sole medical opinion in the file that considered whether these symptoms would have qualified for a definite diagnosis: the opinion of treating neurologist Dr. Chan that Claimant suffered from Parkinson's during the time period of January 2015 to December 2018.

The ALJ discounted this opinion because "the doctor did not treat the Claimant from 2015-2018, and therefore would be unable to provide any objective assessment of the Claimant's limitations, if any, during the relevant period." AR 28; *see also* Doc. 17 (Commissioner's argument on appeal that "any information Dr. Chan had about the Claimant's symptoms or functional abilities prior to December 2022 . . . came entirely from the Claimant's reports and were not her own assessment"). True, a medical opinion may be more persuasive if the provider has seen the claimant during the relevant time. *Cf.* 20 C.F.R. § 404.1520c(c)(3)(v) ("Examining relationship. A medical source may have a better understanding of your impairment(s) if he or she examines you than if the medical source only reviews evidence in your folder."). But it is simply not true that reviewing evidence in a folder renders a provider categorically unable to provide a useful assessment. After all, state agency nonexamining consultants frequently perform this type of review. Yet, ALJs often find their opinions persuasive.

The ALJ—and the Commissioner on appeal—attempted to characterize this opinion as containing no conclusions about the relevant period because Dr. Chan stated, "it is hard for me to ascertain his functional ability prior to meeting him [in December 2022]." AR 28 (quoting AR

718); Doc. 17 at 7-8. As Plaintiff points out, however, this is not the entire story. In addition to making the quoted statement, Dr. Chan *also* unequivocally opined that Claimant's reported symptoms during the relevant period were consistent with Parkinson's. AR 720. In reaching this opinion, she reviewed Claimant's treatment history and the evidence of "bilateral hand tremors since at least 2015 along with chin tremor, dexterity challenges, and overall slowness to do things on a daily basis." AR 718. Dr. Chan then checked the box "yes" to opine that Claimant had Parkinson's during the time period of January 2015 to December 2018, and wrote:

> onset of tremors around 2015 w/ hands and chin. fine motor control challenges
> and slow to do things around then which is consistent w/ Parkinson's

AR 720. This is a clear opinion from Dr. Chan about a diagnosis that relates to the relevant period.

On appeal, the Commissioner further resists this conclusion by arguing that Dr. Chan's opinion does not satisfy Claimant's burden because it is not a medical opinion at all. Doc. 17 at 8. The Court disagrees. "[A] medical opinion is a statement about . . . whether you have one or more impairment-related limitations or restrictions in . . . [y]our ability to perform physical demands of work activities . . . including manipulative . . . functions." 20 C.F.R. § 404.1513(a)(2)(i); *see also Cowan v. Astrue*, 552 F.3d 1182, 1189 (10th Cir. 2008) (a medical opinion is a provider's "judgment about the nature and severity of [the claimant's] limitations, or any information about what activities [the claimant] could still perform").

In the course of his argument, the Commissioner emphasizes Dr. Chan's statement that it was difficult for her to assess Claimant's functioning, as well as her choice to leave blank a series of boxes asking her to perform a more detailed assessment of Claimant's functioning prior to December 2018. Doc. 17 at 8-9; *see* AR 718, 721-24. Certainly, these aspects of Dr. Chan's opinion would be relevant to whether an ALJ found her opinion persuasive at step four. But it

does not mean that it is not a medical opinion. As discussed above, the ALJ found it relevant that the medical evidence did not contain a formal diagnosis of Parkinson's disease during the relevant period. Dr. Chan's opinion fills this gap, opining that Claimant did indeed suffer from Parkinson's during the relevant period, presenting "fine motor control challenges" and rendering him "slow to do things." AR 720. Motor control and speed in performing manipulative tasks are work-related abilities. The lack of greater specificity as to the degree of impairment in these activities does not mean it is not a medical opinion about an impairment.

The medical evidence, including Dr. Chan's opinion, does not "clearly establish" that Claimant had no work-related impairments during the relevant period. Therefore, the Court reverses for the ALJ to proceed beyond step two on remand.

## **CONCLUSION**

For the reasons stated above, Plaintiff's Motion to Remand is **GRANTED**.

**STEVEN C. YARBROUGH**
**United States Magistrate Judge**
**Presiding by Consent**